```
                         UNITED STATES DISTRICT COURT
                         SOUTHERN DISTRICT OF FLORIDA

                         CASE NO. 08-23575-Civ-LENARD
                                 (06-20001-Cr-LENARD)
                         MAGISTRATE JUDGE P. A. WHITE
CARMEN MARIA PONTON CARO, :

      Movant,             :

v.                        :        REPORT OF
                                   MAGISTRATE JUDGE
UNITED STATES OF AMERICA, :

      Respondent.         :
_____
```

### Introduction

This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking her conviction and sentence for conspiracy to provide material support to a designated foreign terrorist organization entered following a guilty plea in case no. 06-20001-Cr-Lenard.

The Court has reviewed the motion (Cv-DE#1) with supporting memorandum (Cv-DE#2) and affidavit (Cv-DE#:3), the government's response with multiple exhibits (Cv-DE#10), the Presentence Investigation Report (PSI), and all pertinent portions of the underlying criminal file.

Construing the movant's claims liberally as afforded *pro se* litigants, pursuant to <u>Haines v. Kerner</u>, 404 U.S. 419 (1972), the movant appears to raise the following claims:

> 1.  She was denied effective assistance of counsel on the basis that there was a lack of communication. (Cv-DE#1:5).
>
> 2.  She was denied effective assistance of

        counsel, where her lawyer provided misadvice and otherwise coerced her to change her plea. (Cv-DE#1:6).

3. She was eligible for application of the safety valve provision of the guidelines. (Cv-DE#1:7).

4. Her plea was unlawfully induced, and she was unaware of the consequences of her plea. (Cv-DE#1:10).

5. She was denied effective assistance of counsel, where her lawyer coerced her into executing a plea agreement containing an appeal waiver which denied her the right to a direct appeal. (Cv-DE#1:12).

<u>Procedural History</u>

The procedural history of the underlying criminal case reveals that on February 27, 2006, a Superseding Indictment was returned charging the movant with conspiracy to provide material support to a designated foreign terrorist organization, in violation of 18 U.S.C. §2339B(a)(1) (Count 1), providing material support to a designated foreign terrorist organization, in violation of 18 U.S.C. §2339B(a)(1) (Count 2), three counts of bringing aliens to the United States for profit, in violation of 8 U.S.C. §1324(a)(2)(B)(ii) (Counts 10-12), and three counts of encouraging and inducing aliens to come to the United States, in violation of 8 U.S.C. §1324(a)(1)(A)(iv) (Counts 13-15). (Cr-DE#15).

On December 7, 2007, the movant entered into a negotiated, written plea agreement, wherein she agreed to plead guilty to Count One of the Superseding Indictment. (Cr-DE#239). The movant acknowledged that the sentence would be imposed by the court after considering the advisory guideline sentence. (Cr-DE#239:1-2). The

2

movant further acknowledged that the court may depart from the applicable advisory guideline range and impose a sentence that is either more or less severe than the guideline sentence. (Id.). The movant agreed that the court was required to consider the advisory guideline sentence, but was not bound to impose such a sentence. (Id.:2). Rather, the court was permitted to tailor the ultimate sentence in light of other statutory concerns, and that the court could ultimately impose a more severe or less severe sentence than the advisory guideline sentence. (Id.:2). The movant understood that she faced a statutory maximum term of up to 15 years in prison. (Id.:2).

In exchange, the government agreed to dismiss all remaining counts after sentencing. (Id.:1). The government also agreed to recommend that the movant's advisory guideline range be reduced up to three levels based on her timely acceptance of responsibility. (Id.:3). The government further agreed that it would not recommend an upward departure from the guideline range as determined by the court based on the nature of the offense, the movant's relevant conduct, or the background of the movant. (Id.:4). The plea agreement also set forth cooperation language. (Id.:4-5).

Moreover, the movant acknowledged that 18 U.S.C. §3742 affords her the right to appeal the sentence imposed, however, as part of the agreement, she was waiving all rights conferred under §3742 to appeal any sentence imposed, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or a variance from the guideline range that the court establishes at sentencing. (Id.:5). The movant also agreed to the entry of a stipulated judicial order of removal pursuant to 8 U.S.C. §1228(c)(5), and to waive rights to any and all forms of relief or

protection from removal, deportation or exclusion under the Immigration and Nationality Act and related federal regulations. (Id.:7).

Prior to sentencing, a PSI was prepared which reveals as follows. Pursuant to U.S.S.G. §2M5.3(a), the base offense level for an offense involving a conspiracy to provide material support to a designated foreign terrorist organization has a base offense level 26. (PSI ¶81). Because the movant was considered an organizer or leader, pursuant to U.S.S.G. §3B1.1(a), an additional four levels were added to her base offense level. (PSI ¶84). The base offense was then reduced three levels based on the movant's timely acceptance of responsibility, resulting in a total adjusted offense level 27. (PSI ¶¶88-90).

The probation officer further determined the movant had a total of zero criminal history points, resulting in a criminal history category I. (PSI ¶93). Based on a total offense level of 27 and a criminal history category III, the guideline imprisonment range was 70 to 87 months imprisonment. (PSI ¶116).

Prior to sentencing, the movant filed objections to the PSI, seeking a mitigating role adjustment based on her minor/minimal role in the offense, and alternatively objecting to the leadership role enhancement. (Cr-DE#290).

On February 25, 2008, the movant appeared for sentencing. (Cr-DE#356). At that time, the court overruled the movant's objections, finding that the four-level aggravating role adjustment was warranted. (Id.:87-90). Thereafter, the movant was sentenced to the low end of the guidelines, to a term of 70 months imprisonment. (Id:; Cr-DE#313).

The movant appealed, raising the sole claim[1] that the trial court erred in imposing an aggravating role adjustment when calculating the movant's guideline sentence. On July 18, 2008, the government filed a motion to dismiss the appeal based on the sentence appeal waiver contained in the plea agreement. On August 29, 2008, the Eleventh Circuit Court of Appeals granted the government's motion to dismiss the appeal, finding the waiver of appeal as contained in the plea agreement to be valid. (Cr-DE#398). For purposes of the federal one-year limitations period, the judgment of conviction in the underlying criminal case became final at the latest on November 29, 2008, when time expired for filing a petition for writ of certiorari, ninety days following dismissal of the movant's direct appeal.[2] At the latest, the movant was required to file this motion to vacate within one year from the time the judgment became final, or no later than November 29, 2009. See Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986). The movant timely filed her motion to vacate on November 3, 2008.[3] (Cv-DE#1).

### Discussion of Claims

It should be noted that claims three and four, as listed above, could have been, but were not raised on direct appeal.

---

[1]The movant's brief on appeal and the government's motion to dismiss the appeal are being filed under separate cover.

[2]The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, United States v. Kaufman, 282 F.3d 1336 (11th Cir. 2002). Once a judgment is entered by a United States court of appeals, a petition for writ of certiorari must be filed within 90 days of the date of entry. The 90 day time period runs from the date of entry of the judgment rather than the issuance of a mandate. Sup.Ct.R. 13; see also, Close v. United States, 336 F.3d 1283 (11th Cir. 2003).

[3]See: Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

5

Notwithstanding, construing the arguments made by the movant liberally, she appears to argue that counsel was ineffective for failing to pursue the claims. A claim of ineffective assistance of counsel may constitute cause for failure to previously raise the issue. United States v. Breckenridge, 93 F.3d 132 (4th Cir. 1996). Attorney error, however, does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test enunciated in Strickland v. Washington, 466 U.S. 668 (1984); Murray v. Carrier, 477 U.S. 478, 488 (1986). Thus, each claim will be identified and treated in turn in this Report, infra.

However, as will be demonstrated in more detail *infra*, the movant is not entitled to vacatur on any of the claims presented.[4] When viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the movant a fundamentally trial and due process of law. The movant therefore is not entitled to habeas corpus relief. See Fuller v. Roe, 182 F.3d 699, 704 (9 Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), overruled on other grounds, Slack v. McDaniel, 529 U.S. 473, 482 (2000). See also United States v. Rivera, 900 F.2d 1462, 1470 (10 Cir. 1990)(stating that "a

---

[4]Briefly, the evidence against the movant was more than sufficient to support her conviction. The movant has not shown that the result of the proceedings would have been affected had counsel proceeded differently. In other words, no deficient performance or prejudice pursuant to Strickland has been established arising from any of the claims raised in this collateral proceedings, nor has a denial of due process been demonstrated. To the contrary, it is clear after independent review of the record that no constitutional violations occurred. Consequently, she has failed to demonstrate that she is entitled to habeas corpus relief in this collateral proceeding.

cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the movant's apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

Here, the movant challenges counsel's effectiveness for numerous reasons. In order to prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance - that her counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(*en banc*). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995).

In the case of ineffective assistance during the punishment phase, prejudice is established if "there is a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been significantly less harsh." Spriggs v. Collins, 993 F.2d 85, 88 (5th Cir. 1993); United States v. Bartholomew, 974 F.2d 39, 42 (5th Cir. 1992). A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. The court need not address both prongs of the Strickland standard if the complainant has made an insufficient showing on one. Id. at 697. However, a movant must establish that the sentence was increased due to

counsel's deficient performance. Glover v. United States, 531 U.S. 198, 203-204 (2001).

In the context of a case in which guilty pleas or the equivalent were entered, application of the second prong of the two-prong Strickland standard requires a showing that there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985). No such showing has been made here.

Moreover, review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11 Cir. 1994).

Finally, although the sentencing process may be reviewed by the district court on a §2255 motion, the severity of a sentence within statutory limits may not be reviewed because it raises no constitutional or statutory question. Kett v. United States, 722 F.2d 687, 690 (11th Cir. 1984); see also, Nelson v. United States, 709 F.2d 39, 40 (11th Cir. 1983)(citing, United States v. Diaz, 662 F.2d 713, 719 (11th Cir. 1981); United States v. Becker, 569 F.2d 951, 965 (5th Cir.), cert. denied, 439 U.S. 865 (1978), United States v. White, 524 F.2d 1249, 1254 (5th Cir. 1975), cert. denied,

8

426 U.S. 922 (1976).); See also Williams v. Alabama, 403 F.2d 1019, 1020 (5th Cir. 1968)(§2254 habeas case)(sentence within statutory limit is generally not subject to constitutional attack); Castle v. United States, 399 F.2d 642, 652 (5th Cir.1968) (§2255 case)(sentence within statutory limit is not reviewable on appeal and does not amount to a constitutional violation). These former Fifth Circuit decisions are controlling authority in this circuit. Bonner v. City of Prichard, Alabama, 661 F.2d 1206, 1209 (11th Cir.1981)(*en banc*).

In **claim one**, the movant asserts that she was denied effective assistance of counsel on the basis that there was a lack of communication. (Cv-DE#1:5). According to the movant, defense counsel never "really" met with her prior to the change of plea hearing to discuss what was going to be expected of her. (Id.; Cv-DE#2:2). In fact, she claims that on the day they executed the written plea agreement, counsel was "drunk."[5] (Id.). According to the movant, she is not "challenging" the Rule 11 proceeding, but claims she was under the impression that she would be permitted to be with her daughters if she accepted the plea agreement, thereby suggesting that she would serve no jail time. (Cv-DE#2:2). She further claims she was under the misapprehension that if she

---

[5]No showing has been made in this habeas proceeding that counsel was inebriated or otherwise unable to offer sound advice to the movant. To the contrary, review of the change of plea transcript reveals that counsel was able to address the court, formulate responses, and the like. Even if we were to assume, without deciding, that counsel was, in fact, inebriated, that fact alone does not render his representation constitutionally deficient. See Kelly v. United States, 820 F.2d 1173, 1175 (11th Cir. 1987)(despite attorney's admitted drug use, the defendant has not met his burden of establishing that this counsel's representation fell below an objective standard of reasonableness).

Finally, there is not one scintilla of evidence in the record to support the movant's representation that her counsel was so inebriated that he could not function or give her proper advise. Consequently, such a bare and conclusory allegation is also subject to summary dismissal. Machibroda v. United States, 368 U.S. 487 (1962).

9

provided the government with information regarding her husband and others, that her sentence would be reduced accordingly. (Id.). These arguments, however, are clearly refuted by the record.

To ensure that a plea is voluntary and knowing, Fed.R.Cr.P. 11(b)(1) states that "the court must address the defendant personally in open court before accepting the plea and inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading." Gordon v. United States, 496 F.3d 1270, 1277 (11th Cir. 2007). The rule imposes upon a district court the obligation and responsibility to conduct a searching inquiry into the voluntariness of a defendant's guilty plea. Id. (citations omitted).

Thus, "[a] court accepting a guilty plea must comply with Rule 11 and specifically address three 'core principles,' ensuring that a defendant (1) enters her guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of her plea." United States v. Moriarty, 429 F.3d 1012, 1019 (2005). In Moriarty, the Eleventh Circuit specifically held as follows:

> [t]o ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting a guilty plea, including: the right to plead not guilty (or persist in such a plea) and to be represented by counsel; the possibility of forfeiture; the court's authority to order restitution and its obligation to apply the Guidelines; and the Government's right, in a prosecution for perjury, to use against the defendant any statement that he gives under oath.

10

Id.

Review of the change of plea proceedings reveals that the court conducted a thorough Rule 11 proceeding. (Cr-DE#376-Transcript Change of Plea). At that time, the movant acknowledged under oath that she was satisfied with counsel's representation, had discussed the nature of the charges, and had adequate time to confer with counsel as to those charges. (Id.:18-19). The court advised and the movant acknowledged understanding the nature of the charges, and the potential consequences of entering a guilty plea, including the fact that the offense carried a maximum of up to 15 years in prison. (Id.:15). The movant further acknowledged that any discussion with her counsel regarding her possible sentence was only an estimate or prediction, and not a promise. (Id.:18). The movant also denied being forced, threatened or coerced into changing her plea. (Id.:18). She further denied that any promises or representations, other than those as contained in the written plea agreement, were made in order to convince her to plead guilty. (Id.:19). Finally, the movant confirmed knowing that by entering into the plea she was waiving her constitutional rights to a jury trial and to confront and present witnesses. (Id.:4-6). She further acknowledged waiving her right to a direct appeal. (Id.31-32).

On the record before this court, it is evident that the movant understood the facts and the elements of the offense upon which the charge rested, including the maximum sentence exposure she faced. Moreover, by way of entering into the negotiated plea agreement, the movant was telling her lawyer not to conduct any further investigation and not present at a trial proceeding any legal defenses that he may be entitled to as it relates to her case. Under these circumstances, no showing has been made that the plea

11

was anything but knowing and voluntary. Thus, the movant has failed to establish that counsel was deficient or that she suffered prejudice therefrom. See Strickland, supra.

Alternatively, to the extent the movant means to argue that counsel failed to communicate with her after the change of plea, but prior to sentencing, this claim is also refuted by the record. In her sworn affidavit (Cv-DE#3:3), the movant concedes she met with counsel a week prior to sentencing. At that time, counsel advised her that her guideline base offense level was 25. (Id.). Counsel also filed objections to the PSI, which were renewed at sentencing. In fact, counsel also cross-examined the government's key witness, and requested a downward departure for numerous reasons. (Cr-DE#356:38-43,69,77-79,92-93). The fact that the court may have overruled these objections in imposing sentence does not mean that counsel was deficient. To the contrary, it is evident that counsel provided vigorous and able representation more than adequate under Sixth Amendment standards. Thus, any argument that counsel was ineffective at sentencing must fail as no showing has been made that counsel was either deficient or that the movant suffered prejudice arising from any alleged deficient performance. See Strickland v. Washington, supra.

Moreover, any alleged misadvice by counsel regarding the movant's sentencing exposure and her belief that her sentence was going to be reduced and/or otherwise terminated based on the plea agreement and/or cooperation with the government was cured by the Rule 11 proceeding. Even if as alleged by the movant, that she was promised or misadvised by counsel that she would not serve any jail time or would get a reduced sentence based on cooperation with the government, that representation was cured by the court who advised her she faced up to 15 years in prison, and that any estimate by

12

counsel regarding her sentence exposure could not form the basis for withdrawal of her plea.

The law is clear that an inaccurate prediction about sentencing alone will generally not be sufficient to sustain a claim of ineffective assistance of counsel. <u>United States v. Pease</u>, 240 F.3d 938, 940-41 (11th Cir. 2001)(rejecting argument by defendant sentenced as a career offender that her plea was not knowing and voluntary because he had relied on counsel's prediction that her potential sentence under the plea agreement would be anywhere from five to ten years); <u>United States v. Arvanitis</u>, 902 F.2d 489, 494-95 (7th Cir. 1990)(no ineffective assistance where claim based only on inaccurate prediction of sentence). Under these circumstances, no deficient performance or prejudice has been established under <u>Strickland</u>. Therefore, the movant is entitled to no relief on this claim.

In **claim two**, the movant asserts that she was denied effective assistance of counsel, where her lawyer provided misadvice and otherwise coerced her to change her plea. (Cv-DE#1:6). The movant suggests here that she is ignorant of the law and as such, her counsel deliberately misled her regarding the potential sentence she could receive from cooperating with the government. (Cv-DE#2:3). The movant claims that had she been properly advised about the penalties she faced, she would not have provided the government with the names of the individuals her husband was involved with and she would not have pleaded guilty, but instead would have proceeded to trial. (Cv-DE#2:3).

This claim is patently frivolous, refuted by the record, and completely self-serving. As previously discussed in relation to claim one above, even if the movant had been misadvised by counsel,

any such misadvice was cured by the court's thorough Rule 11 proceeding. At that time, the movant was advised that she faced 15 years in prison. Notwithstanding, she indicated that she was knowingly and voluntarily changing her plea to guilty. There is nothing of record to suggest that she was coerced, misadvised, or otherwise forced to change her plea. Consequently, she has failed to establish either deficient performance or prejudice pursuant to Strickland and is thus entitled to no relief on this claim.

In **claim three**, the movant asserts that she was eligible for application of the safety valve provision of the guidelines. (Cv-DE#1:7).

It should first be noted that although the sentencing process may be reviewed by the district court on a §2255 motion, the severity of a sentence within statutory limits may not be reviewed because it raises no constitutional or statutory question. Kett v. United States, 722 F.2d 687, 690 (11th Cir. 1984); see also, Nelson v. United States, 709 F.2d 39, 40 (11th Cir. 1983)(citing, United States v. Diaz, 662 F.2d 713, 719 (11th Cir. 1981); United States v. Becker, 569 F.2d 951, 965 (5th Cir.), cert. denied, 439 U.S. 865 (1978), United States v. White, 524 F.2d 1249, 1254 (5th Cir. 1975), cert. denied, 426 U.S. 922 (1976).); See also Williams v. Alabama, 403 F.2d 1019, 1020 (5th Cir. 1968)(§2254 habeas case)(sentence within statutory limit is generally not subject to constitutional attack); Castle v. United States, 399 F.2d 642, 652 (5th Cir.1968) (§2255 case) (sentence within statutory limit is not reviewable on appeal and does not amount to a constitutional violation). These former Fifth Circuit decisions are controlling authority in this circuit. Bonner v. City of Prichard, Alabama, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

14

Regardless, Title 18 U.S.C. §3553(f) provides a "safety valve" for less culpable defendants. United States v. Brownlee, 204 F.3d 1302, 1304 (11th Cir. 2000). The "safety valve" was enacted to permit courts to sentence less culpable defendants to guideline sentences instead of imposing mandatory minimum sentences. United States v. Brehm, 442 F.3d 1291, 1299 (11th Cir.), cert. den'd, __ U.S. __, 127 S.Ct. 457 (2006); U.S.S.G. §5C1.2. In order for the safety valve to be applicable, the defendant must meet the following criteria as outlined in 18 U.S.C. § 3553(f)(1)-(5):

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
>
> (5) not later than the time of the sentencing hearing, the defendant truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

Brownlee, supra at 1304; U.S.S.G. §5C1.2.

Review of the sentencing transcript reveals that the movant was not entitled to application of the safety valve because she was considered a leader, organizer in the offense. (Cr-DE#356:78). Consequently, she could not satisfy section (4) above, and was therefore ineligible for application of the safety valve. At

15

sentencing, counsel objected to the aggravating role, and in fact argued for a minor/minimal role reduction, however, the court overruled the objections, finding in pertinent part as follows:

> ...the evidence is clear and the Government has met its burden that -- for both of the Defendants, Saadat Moheisen and Ponton Caro [movant], that they were leaders of a criminal activity that involved five or more participants or was otherwise extensive.
>
> This was [an] extensive criminal activity that involved the procurement of Spanish passports and stamps that would allow members of FARC to travel to the United States. Both of these Defendants had decision-making authority. They recruited accomplices.
>
> They had a claimed right to a larger share of the fruits of the crime, and that is demonstrated by the fact that Ponton Caro received a payment either in the form of a kickback or some kind of payment from Bautista Martinez, the jeweler who recruited Tapasco Romero.
>
> But they were both involved in the recruitment of accomplices. They stated they had people that could do this. They both stated that they had people who could also provide an avenue for money laundering, $4 to $5 million a month, from Miami to Colombia.
>
> They supervised the people that they recruited, and they had a degree of control and authority that they exercised over the other people to the extent that they followed in a car, both of them, to the airport the alleged FARC members to make sure that they got through the process of immigration that others were accomplishing....
>
> So I do find that both Defendants are equally culpable and should receive an aggravating role and an increase of four levels under 3B1.1.

(Cr-DE#356:87-89).

It is evident from the record that the court's finding in this regard was not error. Thus, as the movant was considered a leader/organizer, she was not eligible for safety valve. Therefore, even if counsel had requested its application, no showing has been made here that such a request would have been granted. Under these

circumstances, the movant is entitled to no relief on this claim.

It should also be noted that, contrary to the movant's apparent allegation in this collateral proceeding, the movant has the burden of proving the applicability of guideline sections which would reduce her offense level. See United States v. Miller, 78 F.3d 507, 511 (11th Cir. 1996)(citations omitted). Consequently, the movant cannot demonstrate either deficient performance or prejudice pursuant to Strickland v. Washington, 466 U.S. 668 (1984), stemming from counsel's failure to further pursue this nonmeritorious claim.

Moreover, the safety valve provision of the guidelines only applies to defendants convicted under specifically enumerated drug offenses. See U.S.S.G. §5C1.2. In this case, the movant was convicted for violating 18 U.S.C. §2339B, which is not one of the specified offenses to which the safety valve applies. Thus, even if counsel had argued the issue, the movant still could not prevail on this claim for this alternative reason.

Additionally, because the court considered the statutory factors and advisory guidelines in fashioning an appropriate sentence (Cr-DE#356:97), the movant also cannot prevail on this claim. See United States v. Williams, 456 F.3d 1351, 1371 (11th Cir. 2006); United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

In **claim four,** the movant asserts that her plea was unlawfully induced, and she was unaware of the consequences of her plea. (Cv-DE#1:10). According to the movant, she was misadvised by counsel regarding her sentence exposure. She claims at the change of plea hearing she responded to the court's questions the way she did because she "thought" that by doing so she would be going home, and not serve any prison time. (Id.). This is a mere reiteration of

17

arguments raised above, and should be denied for the reasons previously expressed in this Report.

As will be recalled, any alleged misadvice by counsel regarding her potential sentence exposure was cured by the court's thorough Rule 11 proceeding. The court advised the movant of the statutory maximum term of imprisonment, and the fact that any prediction or advice from counsel could not be relied upon, as it was only an estimate regarding her potential sentence, which would be determined by the court after considering an advisory guideline range and other statutory factors. The movant acknowledged her understanding of these facts, and nevertheless still entered into a knowing and voluntary plea. Consequently, she cannot establish deficient performance or prejudice under <u>Strickland</u> and is therefore entitled to no relief on this claim.

In **claim five**, the movant asserts that she was denied effective assistance of counsel, where her lawyer coerced her to executing a plea agreement containing an appeal waiver which denied her the right to a direct appeal. (Cv-DE#1:12).

This claim is clearly refuted by the record. As previously noted in this Report, the movant knowingly and voluntarily executed the plea agreement. At the Rule 11 proceeding, she acknowledged discussing the terms of the plea with counsel, and that as part of that plea, she was waiving her right to a direct appeal. (Cr-DE#376:34-35). Thus, she cannot establish either deficient performance or prejudice pursuant to <u>Strickland</u> and is entitled to no relief on this claim.

Finally, the movant's request for an evidentiary hearing on her claims of ineffective assistance of counsel should be denied.

A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this Report, the claims raised are unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

## Conclusion

It is therefore recommended that this motion to vacate sentence be denied in its entirety.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 28th day of April, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Carmen Maria Ponton Caro, Pro Se
   Reg. No. 78412-004
   Federal Correctional Institution
   33 ½ Pembroke Road
   Danbury, CT 06811

   Brian D. Skaret, AUSA
   U.S. Dept. Justice
   950 Pennsylvania Avenue N.W.
   Suite 7645
   Washington, D.C. 20530

   William White, AUSA
   U.S. Attorney's Office
   99 N.E. 4th Street
   Miami, FL 33132